**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| APRIL A. ALOTTO,<br><br>       Plaintiff,<br><br>   v.<br><br>ECSM UTILITY CONTRACTORS, INC.<br>AND EDWARD OPIO, individually,<br>t/a, d/b/a and as the alter<br>ego of ECSM UTILITY<br>CONTRACTORS, INC.<br><br>       Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 09-1144<br>(JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

COSTELLO & MAINS, P.C.
By: Deborah L. Mains, Esq.
    Jeanne Ketcha Chestnut, Esq.
18000 Horizon Way
Mount Laurel, NJ 08054
        Counsel for Plaintiff

SILLS CUMMIS & GROSS P.C.
By: Trent S. Dickey, Esq.
One Riverfront Plaza
P.O. Box 539
Newark, NJ 07102
        Counsel for Defendants

MCNEES WALLACE & NURICK LLC
By: Schaun D. Henry
100 Pine Street
P.O. Box 1166
Harrisburg, PA 17108-1166
        Counsel for Defendants

**IRENAS**, Senior District Judge:

    Plaintiff April Alotto initiated this action against her former employer, ECSM Utility Contractors, Inc. ("ECSM") and

1

Edward Opio, her former supervisor (collectively "Defendants").[1] Plaintiff alleges that Defendants failed to accommodate her disability and discriminated against her on the basis of her disability, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq*.  Pending before the Court is Defendants' Motion for Summary Judgment.

## I.

ECSM is a contracting company that performs work related to utility lines, including marking their locations.  (Defs' 56.1 Stat. ¶2-3.)[2]  ECSM is required by contract to send a utility locator to emergencies within two hours.  (Id. ¶9.)  As a result, ECSM's utility locators must perform on-call duties so they are available for emergencies during non-business hours.  (Id. ¶8.)

Plaintiff began working for Defendants in April 2007 as a utility locator.  (Defs' 56.1 Stat. ¶¶1-3; *see also* Pl's Dep. at 43:21-23.)  Plaintiff worked on the Fiber Optic to the Premises Project ("FTTP") locating utility lines for the installation of fiber optic cables throughout New Jersey.[3]  (Pl's Dep. 20:23.)

In September 2007, Plaintiff was first prescribed medication

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

[2] References to "Defs' 56.1 Stat." are to Defendants' statement of undisputed material facts submitted in support of their Motion.

[3] Utility locators can be assigned to specific projects such as FTTP or to particular geographic areas.  (*See* Opio Dep. at 24:22-25.)

for insomnia, her alleged disability. (Pl's Ctr Stat. of Facts ¶5.) According to Plaintiff, once she takes her insomnia medication, she cannot drive a vehicle. (Pl's Dep. at 33:9-11.)

In February 2008, Plaintiff obtained a note from her doctor explaining that she suffered from insomnia and could not work on-call while taking sleep medication.[4] (Id. ¶10.) As a result, Plaintiff was permitted to be absent from on-call duties provided someone else was willing to work on-call for her.[5] (Defs' 56.1 Stat. ¶11; Pl's Resp. to Defs' 56.1 Stat. ¶11.) Plaintiff's immediate supervisor, Dan Davis, "covered 99%" of Plaintiff's on-call shifts. (Pl's Dep. at 50:10-11.) When Davis could not cover the shift, either he or Plaintiff would find someone else to cover the on-call time.[6] (Id. 51:1-7.)

Although it is not entirely clear, during the course of her

---

[4] Neither Plaintiff nor Defendants could identify when Defendants were given the doctor's note. (*See* Pl's Dep. at 48:11-16; Davis Dep. at 12:1-3; Opio Dep. at 19:3-4.)

[5] Although the parties agree that Plaintiff was required to perform on-call duties, when this requirement arose is subject to dispute. According to Plaintiff, there was no discussion of on-call duties when she was hired because there was no such requirement for utility locators working on FTTP. (Pl's Ctr Stat. of Facts ¶2.) At some point prior to November 2007 when Plaintiff first worked on-call, a decision was allegedly made to require on-call duties for all utility locators. (Id. ¶¶3-4.) Defendant contends that on-call was always a requirement for all utility locators and Plaintiff was informed of this upon her hire. (Defs' 56.1 Stat. ¶6, 8.)

[6] The record establishes neither the period this accommodation was in place nor the number of times Plaintiff used it. In addition to this accommodation, Plaintiff was taken off the on-call schedule for the months of March and April due to her work on FTTP. (*See* Pl's Dep. Exs. D-8, D-10.)

employment, it appears that Plaintiff worked on-call three times: on November 22, 2007, February 20, 2008, and July 5, 2008.  (*See* Pl's Dep. at 70:11-13; Id. at 93:12-17; Id. Ex. D-11.)  Plaintiff did not take sleep medication on the nights she worked on-call. (Defs' 56.1 Stat. ¶14.)  Plaintiff explained that "not being able to take my medication, not being able to get the proper amount of sleep that I require to function properly the next day, being on call affected my everyday duties, which reduced my production."[7] (Pl's Dep. at 92:4-8; see also Pl's Dep. at 54:20-22, 90:22-23.)

In June or July 2008, Plaintiff requested that her on-call area be moved closer to her home.  (Defs' 56.1 Stat. ¶15; Opio Dep. at 20:9-13; Pl's Dep. at 81:16-24.)  Defendants moved Plaintiff's on-call area as requested.  (Defs' 56.1 Stat. ¶16; Opio Dep. 20:12-13; Pl's Dep. at 82:4-6.)

After working on-call on July 5, 2008, Plaintiff requested that she be removed completely from the on-call list because she felt that on-call duties prevented her from working at her full

---

[7] In an email dated February 25, 2008, Plaintiff expressed a different concern with on-call duties unrelated to her insomnia:
> Can you tell me where the incentive is to work on call...meaning...we are getting paid straight time for our on call time until we reach 40 hours....Wednesday night i [sic] did on call worked 5 hours and lost that over time because of the weather on Friday and couldn't work.  Is there a reason on call isn't paid at a rate of time and half for the time you are on it?  Don't you think more people would want to work on call if it was paid at an over time rate?

(Pl's Dep. Ex. D-11.)

potential the next day.  (Pl's Dep. at 95:23-25 to 96:1-2.) Defendants responded to Plaintiff's request in an email dated July 10, 2008, which stated:

> We are aware of the doctors note [sic] and you will not be on call tonight.  Since you cannot fulfill your job requirements of doing the on call do [sic] to medical reasons, I need you to provide me a doctors note indicating you have no restrictions to fulfill your job requirements as utility locator which includes, but not limited to on call.

(Opio Dep. Ex. Opio-2.)  Plaintiff responded in an email dated July 11, 2008:

> I understand that you told me that I can't work until I don't have insomnia or the need for insomnia medication.  Since this is a medical condition that isn't going anywhere you are basically telling me I can't work at all.
>
> I therefore acknowledge that even though you say I'm not fired I'm basically fired anyway.
>
> I consider my self fired as of today.  I will start to look for a new job.  Please send me my Cobra letter and please do not miss represent [sic] the reality here to unemployment.

(Pl's Dep. Ex. 17.)

Plaintiff initiated the instant action by filing a two count Complaint in the Superior Court of New Jersey, Law Division, Camden County on December 8, 2008.  Defendants removed to this Court on March 12, 2009.  On September 23, 2009, Defendants extended to Plaintiff "an unconditional offer of return to work." (*See* Pl's Dep. Ex. D-18.)  On September 24, 2010, Defendants filed the instant Motion for Summary Judgment.

**II.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323).  The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.**

Plaintiff alleges violations of the NJLAD for failure to accommodate and disability discrimination.[8]  Defendants move for

---

[8] The NJLAD prohibits employment discrimination on the basis of a disability "unless the nature and extent of the

summary judgment arguing that Plaintiff cannot make out a prima facie case for either disability discrimination or failure to accommodate.

To establish a prima facie case under the NJLAD for disability discrimination, a plaintiff must prove that (1) she was disabled within the meaning of the statute; (2) she was performing the essential functions of the position, with or without reasonable accommodation; (3) she suffered an adverse employment action because of the disability;[9] and (4) the employer sought another to perform the same work after plaintiff had been removed from the position. *Victor v. State*, 401 N.J. Super. 596, 609 (App. Div. 2008).

A plaintiff claiming a failure to accommodate must make out the first three elements of the disability discrimination case, and must also present evidence that (1) the employer knew about the employee's disability; (2) the employee requested an accommodation; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the

---

disability reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5-4.1.

[9] The NJLAD does not define "adverse employment action" and there is no bright-line rule for identifying an adverse employment action. *Mancini v. Twp. of Teaneck*, 349 N.J. Super. 527, 564 (App. Div. 2002). Nevertheless, actions such as termination from employment or failure to promote constitute adverse employment actions. *Jamison v. Rockaway Twp. Bd. of Educ.*, 242 N.J. Super. 436, 447 (App. Div. 1990).

employer's lack of good faith.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296 (3d Cir. 1999)(cited in *Victor v. State*, 203 N.J. 383, 416 (2010)).[10]

Plaintiff has failed to establish a prima facie case under the NJLAD for disability discrimination and failure to accommodate because there is no evidence from which a reasonable fact-finder could conclude that she suffered an adverse employment action because of her disability.[11]  Although Plaintiff alleges that she was constructively discharged by Defendants' demands that she work on-call and not take her sleep medication, Plaintiff points to no evidence in the record supporting such a conclusion.  (*See* Pl's Br. at 9.)

Constructive discharge involves conduct "so intolerable that a reasonable person would be forced to resign rather than continue to endure it."  *Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 29 (2002).  The constructive discharge standard

---

[10]  In *Victor v. State*, the New Jersey Supreme Court considered at length when a plaintiff may bring a failure to accommodate claim where there was no adverse employment action apart from the failure to accommodate.  *See* 203 N.J. 383. Despite its lengthy analysis of the issue and its recognition of the broad remedial sweep of the NJLAD, the court ultimately declined to decide the issue.  *Id.* at 422.  Therefore, an adverse employment action remains a required element of a prima facie failure to accommodate case.

[11]  In addition, the Court finds that on-call duties were an essential part of Plaintiff's job.  The Court further finds that Defendants accommodated Plaintiff's disability by moving her on-call region closer to her home and allowing her to find coverage for her on-call duties, primarily from her immediate supervisor.

requires "outrageous, coercive and unconscionable" acts that are more egregious than that required for a hostile work environment claim. *Id.*; *see also Toto v. Princeton Twp.*, 404 N.J. Super. 604, 615 (App. Div. 2009).

Plaintiff told Defendants that she considered herself fired after Defendants requested a doctor's note indicating that Plaintiff could perform the requirements of her job. No reasonable fact-finder could conclude that this request amounts to an adverse employment action against Plaintiff or involves outrageous, coercive or unconscionable conduct.[12] *See Marangos*

---

[12] In fact, Defendants' request for additional medical documentation reflects their participation in the accommodation process. Defendants' request came only after Defendants allowed others to cover on-call for Plaintiff, after Plaintiff was moved as per her request to an on-call location closer to her home and after Plaintiff requested that she be removed from the on-call schedule altogether. Defendant Opio testified that he requested a different doctor's note to determine if something had changed or if her condition had worsened. (Opio Dep. at 20:16-19.)

Moreover, Plaintiff's response to Defendants' request, *see supra* pages 5-6, demonstrates her unwillingness to participate in the interactive accommodation process. *See Cattuna v. Sara Lee Corp.*, 2010 WL 3418354 (N.J. Super. App. Div. Aug. 27, 2010)(quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999))(The "employer cannot be faulted if after conferring with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals.").

No reasonable fact-finder could conclude based on all the circumstances that Defendants did not make a good faith effort to accommodate Plaintiff's disability. The mere fact that they did not immediately acquiesce to Plaintiff's demand to be removed from on-call duties and instead requested additional medical documentation indicates neither bad faith nor a revocation of the accommodation already in place. *See Victor*, 203 N.J. at 423("Courts have uniformly concluded that the employer's duty to offer a reasonable accommodation does not cloak the disabled

*v. Flarion Tech., Inc.*, 264 Fed. Appx. 176, 182-83 (3d Cir. 2008)(concluding that speaking Russian, allegedly making disparaging comments about work performance, and questioning amount and timing of employee's vacation was not so outrageous, coercive and unconscionable as to amount to a constructive discharge).

Because Plaintiff cannot demonstrate that she suffered an adverse employment action, a required element for both her disparate treatment and failure to accommodate claims, summary judgment will be granted to Defendants on both counts.[13]

**IV.**

For the reasons stated above, Defendants' Motion for Summary Judgment will be granted.  An appropriate Order accompanies this Opinion.


Dated: December 15, 2010

                                        s/Joseph E. Irenas
                                   **JOSEPH E. IRENAS, S.U.S.D.J.**

---

employee with the right to demand a particular accommodation.").
    Therefore, Plaintiff has failed to establish a prima facie claim of failure to accommodate on this basis as well.

    [13]  To the extent that the Court finds that the corporate Defendant is not liable, there can be no liability for the individually named Defendant.